FILED
United States Court of Appeals
Tenth Circuit

June 29, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DAMIEN PAUL MITCHELL,

     Defendant - Appellant.

No. 15-7076
(D.C. Nos. 6:15-CV-00287-RAW and
6:09-CR-00108-RAW-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **GORSUCH** and **McHUGH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

Damien Paul Mitchell, proceeding pro se, appeals the district court's denial of his

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Mitchell

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

asserted in part that his sentence was enhanced under the residual clause of the Sentencing Guidelines, which the Supreme Court has held to be unconstitutional. The district court denied the motion as untimely, and also noted that the residual clause was not applied in determining Mitchell's sentence. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, we now affirm.

## I

Mitchell pleaded guilty to two felony counts: possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841, and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). The sentencing court applied an enhanced sentence under § 4B1.1 of the Sentencing Guidelines (the "career offender provision"). Under that provision, courts apply a much harsher sentence when the defendant is considered a career offender; it reads in part:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).[1] The Guidelines define a "crime of violence" as a federal or state felony that qualifies under one of three clauses: (1) the crime "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the

---

[1] The relevant provisions of the Sentencing Guidelines in the 2015 Manual are identical in language to the provisions in 2010, when Mitchell was sentenced.

"elements clause"); (2) the crime "is burglary of a dwelling, arson, or extortion, [or] involves use of explosives" (the "enumerated offenses clause"); or (3) the crime "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause").  § 4B1.2(a).  If a defendant is determined to be a career offender, the provision dictates the applicable offense level based on the statutory maximum sentence applicable to the instant offense.  § 4B1.1(b).

At sentencing, Mitchell stipulated that he was a career offender.  The district court stated that the factual basis for the sentence to be imposed was set forth in the Pre-Sentence Report (PSR).  The court found that Mitchell had previously been convicted of two felonies, both under Oklahoma law, that warranted career offender status: assault with a dangerous weapon and unlawful delivery of a controlled drug.  The court thus found Mitchell qualified as a career offender.  But as regards the assault offense, the court did not indicate which of the three generic clauses in § 4B1.2(a) it was applying to conclude that the assault offense qualified as a crime of violence.  After the career offender provision was applied, Mitchell's offense level was 34 (given that the instant conviction carried a statutory maximum of more than 25 years) and his criminal history was Category VI.  § 4B1.1(b).  With a three-point reduction for acceptance of responsibility, his total offense level was 31.  The resulting sentencing range was 188 to 235 months.  U.S.S.G. § 5A.  Mitchell was sentenced to 194 months' imprisonment.  He did not appeal his conviction or sentence.

In 2012, Mitchell filed a motion for reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2). Congress had reduced the applicable sentences for crack cocaine offenses when it passed the Fair Sentencing Act ("FSA") in 2010, and the Supreme Court held that the FSA applied to defendants who committed their offenses before the FSA took effect but were sentenced after that date. Dorsey v. United States, 132 S. Ct. 2321, 2335–36 (2012). Mitchell met these criteria, so the FSA applied to his sentence. Mitchell's newly applicable sentencing range was 151 to 188 months, and the district court reduced his sentence to 184 months. The court acknowledged that the new sentence was on the high end of the revised range, but found in its discretion that such a sentence was appropriate. Mitchell did not appeal from the sentence imposed.

On August 3, 2015, Mitchell filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He alleged that the residual clause of § 4B1.2(a) is virtually identical to the residual clause of the Armed Career Criminal Act (ACCA), which the Supreme Court held to be unconstitutionally vague in Johnson v. United States, 135 S. Ct. 2551 (2015). So, by analogy, Mitchell argued that the residual clause of § 4B1.2(a) is also unconstitutional. He also argued that because the Court had announced a substantive rule in Johnson, the rule should apply retroactively under Teague v. Lane, 489 U.S. 288, 310–11 (1989). Therefore, Mitchell argued, his sentence under the career offender provision was unconstitutional, and he should again be resentenced.

The government filed a response, arguing that Mitchell was not sentenced under the residual clause because his prior predicate conviction for assault with a dangerous

4

weapon was a crime of violence under the elements clause, and therefore <u>Johnson</u> was inapplicable.

The district court denied Mitchell's § 2255 motion, finding that the motion was untimely under the one-year limitations period imposed by § 2255(f). The court found that § 2255(f)(3) did not apply to permit an extension of the one-year limitations period. This provision, if applicable, restarts the one-year limitations period when the Supreme Court newly recognizes a right that is "made retroactively applicable to cases on collateral review." § 2255(f)(3). The district court stated that our circuit applies § 2255(f)(3) only when the Supreme Court has expressly held a new rule to be retroactive, and the court then found that the Supreme Court had not made <u>Johnson</u> retroactive in any case or combination of cases. According to the district court, because § 2255(f)(3) did not apply, Mitchell's motion was timely only if he filed within a year after his judgment of conviction became final, and he had failed to do that. The court then also noted, as the government had argued, Mitchell's sentence had not been enhanced under the residual clause.

Mitchell filed a timely notice of appeal from the district court's order denying his § 2255 motion. He asserted that his sentence was unconstitutional following the holding in <u>Johnson,</u> and that in deciding his § 2255 motion, the district court incorrectly ruled that his prior conviction fell within the elements clause. He also argued that neither the district court at sentencing nor the probation officer in the PSR indicated which generic clause of § 4B1.2(a) applied to his prior assault conviction, which made the court's

sentencing decision ambiguous. Lastly, Mitchell argued that his adjusted sentence under the FSA was improper. He thus asserted two separate claims on appeal: 1) that his sentence was enhanced under the residual clause, which is unconstitutionally vague; and 2) that his sentence reduction under the FSA in 2012 was improperly determined. We granted a certificate of appealability (COA) on the first issue, finding in part that the record was inadequate to decide the issue, and denied a COA on the second issue. We also ordered the government to file a response on the first issue and to supplement the record. Following their receipt, Mitchell also filed a reply brief.

## II

The district court ruled that Mitchell's § 2255 motion was untimely filed and also that his motion failed on its merits. We proceed directly to the merits. Even if we were to conclude that the district court erred in finding that Mitchell's motion was untimely, the error would be harmless because Mitchell's prior predicate conviction for assault with a dangerous weapon under Oklahoma law qualifies as a crime of violence under the elements clause.

We review whether a defendant's prior conviction is a crime of violence under § 4B1.2 de novo. United States v. Wray, 776 F.3d 1182, 1184 (10th Cir. 2015) (citing United States v. Dennis, 551 F.3d 986, 988 (10th Cir. 2008)). We are bound by federal law in interpreting the terms of the career offender provision, and we are bound by the state's interpretation of its own law, "including its determination of the elements of [the

6

offense]." Johnson v. United States (C. Johnson), 559 U.S. 133, 141 (2010).[2]  Also, we have "consistently applied the same analysis" to the career offender provision and the analogous provision of the ACCA where the clauses are "virtually identical."  United States v. Madrid, 805 F.3d 1204, 1210 (10th Cir. 2015) (citing United States v. Thomas, 643 F.3d 802, 805 (10th Cir. 2011); Wray, 776 F.3d at 1184–85; United States v. McConnell, 605 F.3d 822, 828 (10th Cir. 2010)).  The elements and residual clauses of both provisions are identical.  § 4B1.2; 18 U.S.C. § 924(e)(2)(B).  Thus, we may consult cases that analyze these clauses in the ACCA.

As noted above, a defendant is considered a career offender if he has at least two prior felony convictions for offenses that qualify as a crime of violence or a drug offense. To be a crime of violence, the offense must fit under one of three categories: the elements clause, the enumerated offenses clause, or the residual clause.  The Supreme Court held the residual clause of the ACCA to be unconstitutional, Johnson, 135 S. Ct. at 2563, and we held that the identical residual clause of the career offender provision was likewise unconstitutional, Madrid, 805 F.3d at 1211.  The government makes no argument that Mitchell's prior offense satisfies one of the enumerated offenses.  Thus, the offense must qualify under the elements clause or Mitchell's sentence is invalid; that is, the offense must "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another."  § 4B1.2(a)(1).

---

[2]  To avoid confusion with the above-mentioned case from 2015 that is also titled Johnson v. United States, we refer to the 2010 case as C. Johnson.

To determine whether a prior offense fits under one of the generic categories of the

crime of violence definition, we apply one of two approaches. Madrid, 805 F.3d at 1207;

see also Descamps v. United States, 133 S. Ct. 2276, 2283 (2013). If the statute of

conviction contains one indivisible set of elements, we apply the categorical approach: we

look only to the elements of the statute and not the facts underlying the prior conviction.

Descamps, 133 S. Ct. at 2283. But if the statute of conviction is divisible, "that is, when

it 'lists multiple, alternative elements, and so effectively creates several different

crimes,'" we apply the modified categorical approach to "identify, from among several

alternatives, the crime of conviction." Madrid, 805 F.3d at 1207 (quoting Descamps, 133

S. Ct. at 2285). We do this by reviewing a limited set of materials, including "the terms

of the charging document," for the very limited purpose of determining which alternative

elements applied to the defendant's conviction. Shepard v. United States, 544 U.S. 13, 26

(2005); see also Descamps, 133 S. Ct. at 2284–85. We then compare those elements to

the crime of violence categories, still "focus[ing] only 'on the elements, rather than the

facts, of a crime' to determine whether it is categorically a crime of violence under all

circumstances." Madrid, 805 F.3d at 1207 (quoting Descamps, 133 S. Ct. at 2285).

At the time of Mitchell's conviction for assault with a dangerous weapon in

Oklahoma, the statute of conviction read in relevant part:

> Every person who, with intent to do bodily harm and without justifiable or
> excusable cause, commits any assault, battery, or assault and battery upon the
> person of another with any sharp or dangerous weapon, or who, without such
> cause, shoots at another, with any kind of firearm or air gun or other means
> whatever, with intent to injure any person, although without the intent to kill

8

such person or to commit any felony, upon conviction is guilty of a felony . . . .

Okla. Stat. tit. 21, § 645 (1998) (amended 1998).[3] The statute has a divisible set of elements; it criminalizes an "assault, battery, or assault and battery" with a sharp or dangerous weapon, and in the alternative it criminalizes "shoot[ing] at another" with a gun or similar means. See Davis v. State, 354 P.2d 466, 470 (Okla. Crim. App. 1960). The former alternative further contains the sub-alternatives of "assault, battery, *or* assault and battery," and "sharp *or* dangerous weapon." § 645 (emphasis added). We must therefore apply the modified categorical approach, examining the charging document to determine what set of elements was applied to Mitchell.

Mitchell was charged in a Youthful Offender Information, which alleged in part that he violated § 645 when he

> did unlawfully, willfully, wrongfully, intentionally and feloniously, without justifiable or excusable cause, commit an assault on one Joe Thomas with a dangerous weapon, to wit: a gun, held in the hand of said defendant and used by him to present, menace and threaten to shoot the said Joe Thomas, with the unlawful and felonious intent then and there to do him bodily harm . . . .

Supp. ROA (Sealed) at 18. From the terms of the charging document, then, it is apparent that Mitchell was charged under the first alternative part of § 645, and under the sub-alternatives of "assault" and "dangerous weapon." The offense could thus be reduced to: assault upon the person of another with any dangerous weapon with intent to do bodily

---

[3] This language is essentially the same as the statute reads now, except the current version includes "conductive energy weapon" before "or other means whatever." Okla. Stat. tit. 21, § 645 (2016).

9

harm and without justifiable or excusable cause.  An "assault" is further defined in Oklahoma as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another."  Okla. Stat. tit. 21, § 641 (1998).  Stated another way, using the Oklahoma Uniform Jury Instructions, the elements of the crime of conviction are: 1) a willful and unlawful attempt or offer to do a bodily hurt with force or violence; 2) upon another person; 3) with a dangerous weapon; 4) without justifiable or excusable cause; 5) with intent to do bodily harm.  OUJI-CR 4-2, 4-12.  A "dangerous weapon" is further defined as one of several weapons including a pistol, revolver, dagger, or implement likely to cause death or bodily harm.  OUJI-CR 4-28.

Under Oklahoma law, the offense of assault may be characterized by either an attempted battery or a threatened imminent battery (i.e., an "offer") with an overt act beyond mere words.  Crilley v. State, 181 P. 316, 316 (Okla. Crim. App. 1918); § 641; see also OUJI-CR 4-3 cmt. ("Oklahoma defines assault as an attempted battery, as well as an intentional placing of another in apprehension of receiving an imminent battery.").[4] The amount of force necessary to constitute a simple assault or simple battery in Oklahoma is "only the slightest force or touching."  Steele v. State, 778 P.2d 929, 931 (Okla. Crim. App. 1989).

Our task is to determine whether the above elements include "the use, attempted use, or threatened use of physical force against the person of another."  § 4B1.2(a)(1).

_____

[4] We refer to these two types of assault as "attempted-battery assault" and "apprehension-causing assault," respectively.

The Supreme Court clarified that the amount of force required to satisfy the elements clause is "*violent* force—that is, force capable of causing physical pain or injury to another person." C. Johnson, 559 U.S. at 140. And we have held that simple battery under Oklahoma law does not satisfy the elements clause because it may be accomplished by a slight touch. United States v. Smith, 652 F.3d 1244, 1247 (10th Cir. 2011).[5] Therefore we must determine whether § 645 satisfies the requisite violent force necessary because it contains the additional element of "a dangerous weapon."

We have held that apprehension-causing assault with a deadly weapon does include as an element the threatened use of force. United States v. Ramon Silva, 608 F.3d 663, 670 (10th Cir. 2010). The New Mexico statute in Ramon Silva involved a very similar definition of deadly weapon as the "dangerous weapon" definition here. Id. (quoting N.M. Stat. Ann. § 30-1-12(B)). We held that "[p]urposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of 'force capable of causing physical pain or injury' in two different ways." Id. at 672 (quoting C. Johnson, 559 U.S. at 141). First, "[t]he conduct 'could always lead to . . . substantial and violent contact, and thus it would

---

[5] We have also "unequivocally held that the text of § 4B1.2 only reaches purposeful or intentional behavior." United States v. Duran, 696 F.3d 1089, 1093 (10th Cir. 2012) (quoting United States v. Armijo, 651 F.3d 1226, 1236 (10th Cir. 2011)). If the elements of an offense may be proven without intentional or purposeful conduct (e.g., an offense that may be committed with a reckless mens rea), that offense does not constitute a crime of violence. Our holding today does not change this requirement; the statute here specifically requires the "intent to do bodily harm," § 645, and "willful" conduct, § 641.

11

always include as an element' the threatened use of violent force." Id. (quoting United

States v. Treto-Martinez, 421 F.3d 1156, 1160 (10th Cir. 2005)). Second, "the conduct

'could at least put the victim on notice of the possibility that the weapon will be used

more harshly in the future, thereby constituting a threatened use of force.'" Id. (quoting

United States v. Dominguez, 479 F.3d 345, 349 (5th Cir. 2007)). Therefore, following

Ramon Silva, when a statute criminalizes "purposefully threatening . . . a victim[] with a

weapon capable of causing death or great bodily harm," a conviction under that statute is

a crime of violence. Id.

Given the above precedent,[6] we conclude that the additional element of a deadly or

dangerous weapon makes an apprehension-causing assault a crime of violence, even if the

simple assault would not be. And if an apprehension-causing assault with a deadly or

dangerous weapon constitutes a sufficient threat of force to satisfy the elements clause,

then an attempted-battery assault with such a weapon does as well; an attempted-battery

assault contains as an element the *attempted* use of force, not only the threatened use of

---

[6] We also note three unpublished cases in our circuit where, the government argues, we have held that § 645 satisfies the elements clause. United States v. Miller, 539 F. App'x 874 (10th Cir. 2013) (unpublished); United States v. Hill, 200 F. App'x 783 (10th Cir. 2006) (unpublished); United States v. Ortega-Garcia, 12 F. App'x 897 (10th Cir. 2001) (unpublished). Miller is hardly controlling, as we summarily stated that § 645 "clearly requires the use or threatened use of physical force," without further analysis. 539 F. App'x at 876 n.4. Hill is inapposite because that case involved an assault *and battery* conviction, and because we considered the facts of the offense rather than the elements alone. 200 F. App'x at 787–88. We did say in Ortega-Garcia that an assault under § 645 satisfies either the elements or residual clause, 12 F. App'x at 899–900, but that decision came before the Supreme Court clarified the requisite level of force in C. Johnson, so the decision does not fully resolve the question.

force.  With the addition of a deadly or dangerous weapon, therefore, an attempted-battery assault is a crime of violence under the elements clause as well.

The statute here criminalizes an intentional attempt or threat to commit violence on another—that is, either an attempted-battery assault or an apprehension-causing assault—with a weapon capable of causing great bodily harm.  In other words, a conviction under this portion of § 645 categorically requires proof of the attempted use or threatened use of violent force.  Following our precedent, a conviction under these elements of § 645 "is categorically a crime of violence under all circumstances."  Madrid, 805 F.3d at 1207.  Because the relevant portion of § 645 satisfies the elements clause, Mitchell's sentence is supported without reliance upon the residual clause and is therefore unaffected by the Supreme Court's holding in Johnson.  His motion fails on its merits.[7]

### III

For the reasons stated above, we AFFIRM the judgment of the district court.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

---

[7] In his reply brief, Mitchell argues that the district court failed to specify the generic category under which his prior offense qualified as a crime of violence.  But because his prior conviction qualified under the still-valid elements clause, any error was harmless because the outcome would have been the same if the court explicitly applied that clause.  He also asks that we remand the case because the court did not review documentation of his prior offense.  However, we may examine the charging document ourselves and need not remand.  See, e.g., United States v. Hernandez, 568 F.3d 827, 829 (10th Cir. 2009).

13